UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| FAN ZHANG, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | No. 1:12-cv-02450 |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) ) | Judge Charles R. Norgle, Sr. Magistrate Judge Nan R. Nolan |
| GROUPON, INC., et al., | ) ) | |
| Defendants. | ) ) | |
| KATHLEEN ROSELLI, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | No. 1:12-cv-02460 |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) ) | Judge Charles R. Norgle, Sr. Magistrate Judge Nan R. Nolan |
| GROUPON, INC., et al., | ) ) | |
| Defendants. | ) ) ) | |

[Caption continued on following page.]

THE CONSTRUCTION LABORERS PENSION TRUST OF GREATER ST. LOUIS'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL

715327_1

| | |
|---|---|
| DENNIS EINSPAHR, Individually and on Behalf of All Others Similarly Situated, | ) No. 1:12-cv-02547 ) ) CLASS ACTION |
| Plaintiff, | ) ) |
| vs. | ) Judge Charles R. Norgle, Sr. ) Magistrate Judge Nan R. Nolan |
| GROUPON, INC., et al., | ) ) |
| Defendants. | ) ) |
| JOHN PEDROW, Individually and on Behalf of All Others Similarly Situated, | ) No. 1:12-cv-02791 ) ) CLASS ACTION |
| Plaintiff, | ) ) |
| vs. | ) Judge Charles R. Norgle, Sr. ) Magistrate Judge Nan R. Nolan |
| GROUPON, INC., et al., | ) ) |
| Defendants. | ) ) |
| JOHN H. COTTRELL, Individually and on Behalf of All Others Similarly Situated, | ) No. 1:12-cv-03129 ) ) CLASS ACTION |
| Plaintiff, | ) ) |
| vs. | ) Judge Charles R. Norgle, Sr. ) Magistrate Judge Nan R. Nolan |
| GROUPON, INC., et al., | ) ) |
| Defendants. | ) ) ) |

715327_1

The Construction Laborers Pension Trust of Greater St. Louis (the "Pension Trust") respectfully submits this memorandum of law in support of its motion for: (1) consolidation of the related actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure; (2) appointment of the Pension Trust as lead plaintiff in this action pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4; and (3) approval of the Pension Trust's selection of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as lead counsel for the class.

I.     INTRODUCTION

Presently pending in this district are five related securities class action lawsuits (the "Related Actions") on behalf of all persons who purchased or otherwise acquired the securities of Groupon, Inc. ("Groupon" or the "Company") between November 4, 2011 and March 30, 2012, inclusive (the "Class Period"), and/or who acquired shares of Groupon common stock pursuant or traceable to the Company's false and misleading Registration Statement and Prospectus issued in connection with its November 4, 2011 initial public offering ("IPO"), against Groupon, the underwriters in the IPO, and certain of Groupon's officers and/or directors for violations of the Securities Act of 1933 ("1933 Act") and Securities and Exchange Act of 1934 (the "1934 Act"). In securities class actions, the PSLRA requires district courts to resolve consolidation prior to appointing a lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(ii).[1] Here, the Related Actions should be consolidated because they each involve substantially similar issues of law and fact. *See* Fed. R. Civ. P. 42(a).

As soon as practicable after its decision on consolidation, the Court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions." *See* 15 U.S.C. §78u-4(a)(3)(B)(ii). The lead plaintiff is the "member or members of the purported plaintiff class that the court

---

[1]     The PSLRA amended the 1933 and 1934 Acts in virtually identical respects. *Compare* 15 U.S.C. §77z-1(a)(3)(B) *with* 15 U.S.C. §78u-4(a)(3)(B). For simplicity and consistency, only the 1934 Act provisions are cited herein.

- 1 -

715327_1

determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). The Pension Trust should be appointed as lead plaintiff because it: (1) timely filed this Motion; (2) to its counsel's knowledge, has the largest financial interest in the relief sought by the class; and (3) will fairly and adequately represent the interests of the class. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). In addition, the Pension Trust's selection of Robbins Geller as lead counsel for the class should be approved. *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

## II.      FACTUAL BACKGROUND

Groupon is a local e-commerce marketplace that connects merchants to consumers by offering goods and services at a discount. The Complaint alleges that defendants issued materially false and misleading statements about the Company's business practices and financial results during the Class Period. Specifically, defendants failed to disclose negative trends in Groupon's business and made false statements as to Groupon's financial results. As a result of these false statements, defendants were able to successfully accomplish Groupon's IPO at $20.00 per share, and subsequently Groupon's stock traded at artificially inflated prices during the Class Period, reaching a high of $26.19 per share on November 18, 2011.

On November 3, 2011, Groupon announced the pricing of its IPO of 35 million shares of common stock at $20 per share (not including an overallotment option granted to the underwriters to purchase up to an additional 5.25 million shares), for net proceeds of $658 million, pursuant to the IPO. As part of the Prospectus and Registration Statement issued in connection with the IPO and during the Class Period, defendants represented that the Company had competitive advantages that would benefit its business and reported financial results that showed dramatic growth.

On March 30, 2012, after the market closed, Groupon issued a press release announcing a revision to its fourth quarter and full year 2011 financial results. The Company reported a reduction in its fourth quarter 2011 revenue of $14.3 million after initially reporting sales of $506.5 million.

This resulted in an increase to Groupon's fourth quarter 2011 operating expenses that reduced operating income by $30 million, net income by $22.6 million, and earnings per share by $0.04. Groupon attributed the revisions to a shift in the Company's fourth quarter deal mix and higher price point offers, which resulted in higher refund rates. On this news, Groupon's stock dropped $3.10 per share to close at $15.28 per share on April 2, 2012, a decline of 17% on volume of 10 million shares.

The true facts, which were known by the defendants but concealed from the investing public during the Class Period, were as follows: (a) Groupon's financial results were materially false and misleading in violation of Generally Accepted Accounting Principles ("GAAP"); (b) Groupon's revenues were overstated in violation of GAAP; (c) Groupon's business was not growing to the extent represented by defendants and was not nearly as resistant to competition as suggested by defendants; (d) the IPO Registration Statement and Prospectus concealed that Groupon was not in compliance with the laws and regulations of some of the countries in which it operated, including the United Kingdom; and (e) Groupon's internal controls were so poor and inadequate that Groupon's reported results were not reliable. As a result of defendants' false statements, Groupon's stock traded at inflated levels during the Class Period. However, after the truth began to leak into the market, the Company's shares declined by more than 40% from their Class Period high, causing real economic loss to investors who purchased the stock during the Class Period.

## III.     ARGUMENT

### A.     The Related Actions Should Be Consolidated

"If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions . . . ." Fed. R. Civ. P. 42(a). Here, the Related Actions assert claims on behalf of purchasers of Groupon common stock for alleged violations of the 1933 and 1934 Acts. Each of the Related Actions name the Company, the underwriters and the same officers and/or directors as defendants and involve the same factual and legal issues, namely, whether defendants

made materially false and misleading statements in violation of §11 and §15 of the 1933 Act, whether plaintiffs purchased Groupon common stock at artificially inflated prices as a result of defendants' allegedly false and misleading statements, and whether defendants' conduct violates §10(b) and §20(a) of the 1934 Act and SEC Rule 10b-5. Thus, the Related Actions should be consolidated. *See generally Craig v. Sears Roebuck & Co.*, 253 F. Supp. 2d 1046, 1047 (N.D. Ill. 2003) (Bucklo, J.).

### B. The Pension Trust Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the 1934 Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i). First, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the first complaint. 15 U.S.C. §78u-4(a)(3)(A)(i). Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person or group of persons that –

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I). The Pension Trust meets each of these requirements and should therefore be appointed as lead plaintiff.

#### 1. This Motion Is Timely

The notice published in this action informed class members that the deadline to move for appointment as lead plaintiff was 60 days from April 3, 2012, or June 2, 2012. *See* Motion, Ex. B; 15 U.S.C. §78u-4(a)(3)(A). June 2nd was a Saturday. The "next day that [was] not a Saturday,

Sunday, or legal holiday" was Monday, June 4. *See* Fed. R. Civ. P. 6(a)(1)(C). As this Motion is being filed on June 4th, it is timely. Thus, the Pension Trust has complied with the PSLRA's first requirement and is entitled to be considered for appointment as lead plaintiff.

### 2. The Pension Trust Has the Largest Financial Interest in the Relief Sought by the Class

During the Class Period, the Pension Trust expended more than $230,000 acquiring 9,200 Groupon shares pursuant and/or traceable to the IPO, and suffered approximately $100,000 in losses as a result of defendants' alleged misconduct. *See* Motion, Ex. C.[2] To the best of their counsel's knowledge, there are no other named plaintiffs who have a larger financial interest. Therefore, the Pension Trust satisfies the PSLRA's prerequisite of having the largest financial interest.

### 3. The Pension Trust Otherwise Satisfies Rule 23 of the Federal Rules of Civil Procedure

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class; and [that] the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4). "In selecting the lead plaintiff under the PSLRA," "typicality and adequacy of representation are the only relevant considerations." *In re Motorola Sec. Litig.*, 2003 U.S. Dist. LEXIS 12651, at *10 (N.D. Ill. 2003) (Pallmeyer, J.) (explaining that a "wide-ranging analysis of the Rule 23 factors should be left for consideration of a motion for class certification").

Rule 23 requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class; and [that] the representative parties will fairly and adequately protect

---

[2] The Pension Trust's losses are the same regardless of whether FIFO or LIFO is used.

the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4). Under Rule 23(a), claims are typical if they "'arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (citation omitted). Typicality exists even if there are some factual distinctions between the claims of the named plaintiff and those of other class members. *See De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). "To meet the adequacy requirement, the plaintiff must demonstrate that (1) his claims are not antagonistic or in conflict with those of the class; (2) he has sufficient interest in the outcome of the case to ensure zealous advocacy; (3) he is represented by competent, experienced counsel who will be able to prosecute the litigation vigorously." *Motorola*, 2003 U.S. Dist. LEXIS 12651, at *11.

Here, the Pension Trust satisfies the typicality requirement for purposes of selecting a lead plaintiff because, like other class members, it: (1) purchased Groupon common stock pursuant and/or traceable to the IPO and during the Class Period; (2) paid allegedly inflated prices because of defendants' false and misleading statements; and (3) thereby suffered damages. Thus, the Pension Trust's claims are typical of those of other class members since their claims and the claims of other class members arise out of the same course of events.

As institutional investors with prior experience serving as a fiduciary in shareholder litigation, the Pension Trust believes that its knowledge, experience, and resources will enable it to adequately represent the class's interests. Furthermore, there is no evidence of antagonism or conflict between the Pension Trust and the class. The Pension Trust's significant loss further demonstrates that it has a sufficient interest in the outcome of the case to ensure zealous advocacy on behalf of the class. *See* Motion, Ex. C. Additionally, as explained below, the Pension Trust's proposed lead counsel is highly qualified, experienced and able to conduct this complex litigation in

a professional manner. The Pension Trust believes that all of these factors sufficiently evidence its capacity and willingness to serve as lead plaintiff.

Thus, the Pension Trust satisfies the requirements of Rule 23 for the purposes of this Motion.

### C. The Court Should Approve the Pension Trust's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). This Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa). The Pension Trust has selected Robbins Geller to serve as lead counsel.

Robbins Geller, a 180-lawyer firm with offices nationwide and in this District, is actively engaged in complex litigation, particularly securities litigation. *See* Motion, Ex. D. Robbins Geller's reputation for excellence has been repeatedly noted by district courts throughout the country and has resulted in the appointment of Robbins Geller attorneys to lead roles in hundreds of complex class action securities cases.[3] In this District, Robbins Geller methodically prepared the *Jaffe v. Household Int'l, Inc.*, No. 02-5893 (N.D. Ill. 2002) (Guzman, J.) case for trial over a six-year period, including taking more than 60 depositions and reviewing millions of pages of documentary evidence. In May 2009, the six-week trial yielded a plaintiffs' verdict. The *Household* trial and favorable verdict demonstrates Robbins Geller's willingness to commit the necessary resources to protect the interests of the class. In addition, Robbins Geller attorneys are responsible for obtaining

---

[3] Judge Melinda Harmon commented that the "experience, ability, and reputation of the attorneys of [Robbins Geller] is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country." *In re Enron Corp. Sec.*, 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008). Similarly, Judge Algenon Marbley, in approving the $600 million recovery by Robbins Geller attorneys in *Cardinal Health*, noted that the "quality of representation in this case was superb." *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (Lawyers with Robbins Geller are "nationally recognized leaders in complex securities class actions. The quality of the representation is demonstrated by the substantial benefit achieved for the Class and the efficient, effective prosecution and resolution of this action.").

the largest securities fraud class action recovery ever, as well as the largest recoveries in the Fifth, Sixth, Eighth, Tenth and Eleventh Circuits.[4]

Thus, the Court may be assured that in the event this Motion is granted, the members of the class will receive the highest caliber of legal representation available from Robbins Geller. *See* Motion, Ex. D. Accordingly, the Pension Trust's selection of counsel should be approved.

## IV. CONCLUSION

The Pension Trust has satisfied each of the PSLRA's requirements for appointment as lead plaintiff. Accordingly, the Pension Trust respectfully requests that the Court grant its Motion for consolidation, appointment as lead plaintiff and approval of its selection of counsel.

DATED: June 4, 2012

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
JAMES E. BARZ (IL Bar # 6255605)

s/ JAMES E. BARZ
JAMES E. BARZ

200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Telephone: 312/674-4674
312/674-4676 (fax)

---

[4] *See In re Enron Corp. Sec.*, No. H-01-3624 (S.D. Tex.) (Harmon, J.) ($7.3 billion recovery for the class is largest in U.S. history and in the 5th Circuit); *In re Cardinal Health, Inc. Sec. Litig.*, No. C2-04-00575 (S.D. Ohio) (Marbley, J.) ($600 million recovery for the class is the largest recovery in the 6th Circuit); *In re UnitedHealth Group Inc. Sec. Litig.*, No. 0:06-cv-01691 (D. Minn.) (Rosenbaum, J.) ($925 million recovery for the class is the largest recovery in the 8th Circuit); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, No. 01-cv-1451 (D. Colo.) ($445 million recovery for the class is the largest recovery in the 10th Circuit; Robbins Geller attorneys also created a mechanism that allowed class members to share an additional $250 million recovered by the SEC); *In re HealthSouth Corp. Sec. Litig.*, No. CV-03-BE-1500 (N.D. Ala.) ($671 million recovery for the class is the largest securities settlement in the 11th Circuit).

715327_1

- 9 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

[Proposed] Lead Counsel for Plaintiffs

CAVANAGH & O'HARA
PATRICK J. O'HARA
407 East Adams Street
Springfield, IL 62701
Telephone: 217/544-1771
217/544-9894 (fax)

Additional Counsel for Plaintiff

715327_1

CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2012, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 4, 2012.

s/ JAMES E. BARZ
JAMES E. BARZ

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:   jbarz@rgrdlaw.com

715327_1

# Mailing Information for a Case 1:12-cv-02450

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **James E Barz**
  jbarz@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Allen W Burton**
  aburton@omm.com

- **Elizabeth Abbene Coleman**
  ecoleman@jenner.com,cgioielli@jenner.com,rdepinto@jenner.com

- **Kevin Buckley Duff**
  kduff@rddlaw.net,kpritchard@rddlaw.net

- **Edward N. Moss**
  emoss@omm.com

- **Danielle S. Myers**
  dmyers@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Amelia Susan Newton**
  newton@laskyrifkind.com

- **Michael Rachlis**
  mrachlis@rddlaw.net,kpritchard@rddlaw.net,eteter@rddlaw.net

- **Norman Rifkind**
  rifkind@laskyrifkind.com

- **Marc David Sokol**
  msokol@jenner.com,sdalal@jenner.com,cgioielli@jenner.com,mgarcia@jenner.com,docketing@jenner.com,rdepinto@jenner.com

- **Howard Steven Suskin**
  hsuskin@jenner.com,docketing@jenner.com

- **Anton Ronald Valukas**
  avalukas@jenner.com

- **Heidi E. VonderHeide**
  vonderheide@laskyrifkind.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Jonathan           Rosenberg
O'Melveny & Myers
Times Square Tower
7 Times Square
New York, NY 10036
```