

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re GROUPON, INC. SECURITIES LITIGATION ) ) ) ) ) This Document Relates To: ) ) ALL ACTIONS. ) ) ) ) | Master File No. 12 C 2450<br><br>CLASS ACTION<br><br><br>Hon. Charles R. Norgle |

## OPINION AND ORDER

Before the Court are three competing motions for appointment as lead plaintiff and approval of lead counsel. For the following reasons, the Court grants Michael Carter Cohn's ("Cohn") motion to serve as lead plaintiff and approves the selection of Pomerantz Haudek Grossman & Gross LLP as lead counsel in this action. The remaining motions are denied.

## I. INTRODUCTION

This is a securities class action on behalf of all persons who purchased or otherwise acquired the common stock of Groupon, Inc. ("Groupon"), "between November 4, 2011 and March 30, 2012, inclusive . . . and/or who acquired shares of Groupon common stock pursuant or traceable to the Company's false and misleading Registration Statement and Prospectus issued in connection with its November 4, 2011 initial public offering." Compl. ¶ 1.[1] Plaintiffs allege that, during the class period, "defendants issued materially

---

[1] Defendants in this case are Groupon, Andrew Mason, Jason E. Child, Joseph M. Del Preto, Eric P. Lefkofsky, Theodore J. Leonsis, Peter J. Barris, Kevin J. Efrusy, Mellody Hobson, Bradley A. Keywell, Howard Schultz, Morgan Stanley & Co. LLC, Goldman, Sachs & Co., Credit Suisse

false and misleading statements regarding the Company's business practices and financial results. Specifically, defendants failed to disclose negative trends in Groupon's business and made false statements as to Groupon's financial results." Id. ¶ 3.

On June 8, 2012, the Court issued an order consolidating for all purposes Case Numbers 12 C 2450, 12 C 2460, 12 C 2547, 12 C 2791, and 12 C 3129 as <u>In re Groupon, Inc. Securities Litigation</u>, Master File No. 12 C 2450. The Private Securities Litigation Reform Act of 1995 ("PSLRA"), provides that "[a]s soon as practicable after [deciding consolidation], the court shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions." 15 U.S.C. § 78u-4(a)(3)(B)(ii). Five movants originally sought appointment as lead plaintiff in this case: (1) Cohn; (2) John Pedrow and Stephens Johnson ("Pedrow and Johnson"); (3) Gus Sekas ("Sekas"); (4) Mario Orlandi and Daniel Wright ("Orlandi and Wright"); and (5) the Construction Laborers Pension Fun of Greater St. Louis (the "Pension Trust").

After the movants filed their original motions, Sekas withdrew, stating that he "believes that [Cohn] has the largest financial interest in the relief sought in this action and appears otherwise typical and adequate pursuant to Rule 23." Notice of Withdrawal of Gus Sekas' Mot. for App. as Lead Pl. & Approval of Selection of Counsel 1. Orlandi and Wright also withdrew their motion. Pedrow and Johnson have not withdrawn but concede that Cohn has the largest financial interest in the outcome of this litigation. Accordingly, Pedrow and Johnson state that they are ready to step in as lead plaintiff "[s]hould the Court find Mr. Cohn unsuitable to serve as lead plaintiff for any reason."

---

Securities (USA) LLC, Allen & Company LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Barclays Capital Inc., Citigroup Global Markets Inc., Deutsche Bank Securities Inc., J.P. Morgan Securities LLC, Wells Fargo Securities, LLC, William Blair & Company L.L.C., Loop Capital Markets, Inc., RBC Capital Markets LLC and The Williams Capital Group, L.P.

Pedrow & Johnson's Mem. of Law in Further Supp. of Mot. to App. Lead Pl. 4. The Pension Trust—the lone institutional investor—challenges both Cohn and Pedrow and Johnson's motions. For the following reasons, Cohn's motion is granted and the remaining motions are denied.

## II. ANALYSIS

### A. Legal Standard

The PSLRA requires that the Court "appoint as a lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members." 15 U.S.C. § 78u–4(a)(3)(B)(i). The PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the "person or group of persons" that:

> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

Id. at § 78u–4(a)(3)(B)(iii)(I). This presumption may be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff— (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." Id. at § 78u–4(a)(3)(B)(iii)(II). The PSLRA further provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." Id. at § 78u–4(a)(3)(B)(v). As each movant has filed a timely motion in response to a notice under subparagraph A(i), the Court focuses its analysis on the party

with the largest financial interest and the requirements of Federal Rule of Civil Procedure 23.

**B. Largest Financial Interest**

"Under the PSLRA, presumptively, the lead plaintiff shall be the party with the largest financial interest in the relief sought by the class, assuming that person otherwise satisfies the requirements of Rule 23." Craig v. Sears Roebuck & Co., 253 F. Supp. 2d 1046, 1047-48 (N.D. Ill. 2003). Though the PSLRA offers no guidance for how to measure which potential lead plaintiff has the "largest financial interest," many courts in this District and others look to the following four factors: "(1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs." Lax v. First Merch. Acceptance Corp., No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug.11, 1997); see also In re: Cendant Corp. Litig., 264 F.3d 201, 262 (3d Cir. 2001) (applying Lax factors); Varghese v. China Shenguo Pharm. Holdings, Inc., 589 F. Supp. 2d 388, 394-95 (S.D.N.Y. 2008) ("[C]ourts in this District overwhelmingly rely on the factors derived from [Lax] . . . to evaluate who has the greatest financial interest."); City of Sterling Heights Gen. Emp. Ret. Sys. v. Hospira, Inc., No. 11 C 8332, 2012 WL 1339678, at *4 (N.D. Ill. Apr. 18, 2012) (same). "While courts differ on the precise weight to apply to each factor, most courts agree that [the] fourth factor—the approximate losses suffered—is the most salient factor in assessing the lead plaintiff." City of Sterling Heights Gen. Emp. Ret. Sys., 2012 WL 1339678, at *4 (collecting cases); see also Takara Trust v. Molex Inc., 229 F.R.D. 577, 579 (N.D. Ill. 2005) (explaining that, to determine financial interest, "most courts simply determine which potential lead

plaintiff has suffered the greatest total losses"); Varghese, 589 F. Supp. 2d at 395 ("Financial loss . . . is the most important element of the [lead plaintiff] test.").

Here, there is no dispute that Cohn suffered the greatest loss during the class period. Applying the widely accepted Lax factors, Cohn has the largest financial interest in this action, as indicated by the table below:[2]

| Movant | Shares Purchased | Amount Expended | Shares Retained | Net Losses Suffered |
|---|---|---|---|---|
| Cohn | 24,800 | $604,106 | 20,800 | $263,437 |
| Pedrow & Johnson | 16,000 | $384,005 | 16,000 | $169,405 |
| Pension Trust | 9,200 | $232,731 | 6,700 | $101,556 |

Accordingly, Cohn will qualify as the "presumptively most adequate plaintiff" so long as he satisfies the requirements of Rule 23.

## C. Rule 23 Requirements

A lead plaintiff must also make a preliminary showing that it satisfies that typicality and adequacy requirements of Rule 23. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(cc); Johnson v. Tellabs, Inc., 214 F.R.D. 225, 228 (N.D. Ill. 2002) ("In selecting the lead plaintiff under the PSLRA . . . typicality and adequacy of representation are the only relevant considerations."). Cohn has met this burden.

"A lead plaintiff meets the typicality requirement if its 'claims or defenses . . . are typical of the claims or defenses of the class[.]'" Takara Trust, 229 F.R.D. at 580 (quoting Fed. R. Civ. P. 23(a)(3)). "A lead plaintiff's claims can be considered typical if they arise out of the 'same event or practice or course of conduct that gives rise

---

[2] The amount expended and net losses suffered are slightly different in Pedrow and Johnson's submission, but the difference is not material in calculating the loss amounts for purposes of selection of the lead plaintiff. Pedrow and Johnson assert that the amounts expended were: Cohn ($512,026), Pedrow and Johnson ($237,194.74), and Pension Trust ($181,630.50), and that the net losses suffered were Cohn ($263,437), Pedrow and Johnson ($177,444.74), and Pension Trust ($100,000). See Pedrow & Johnson's Mem. of Law in Further Supp. of Mot. to App. Lead Pl. 1.

to the claims of other class members and . . . [its] claims are based on the same legal theory.'" Id. (quoting De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983)). The lead plaintiff's claims need not be identical to satisfy this requirement. Johnson, 214 F.R.D. at 228. Here, there is no dispute that Cohn's claims are based on the same legal theories and arise from the same events and course of conduct giving rise to the claims of other class members. Cohn purchased Groupon securities during the class period, paid prices allegedly inflated because of the claimed false and misleading statements by defendants, and thereby allegedly suffered damages. As such, Cohn meets the typicality requirement of Rule 23(a). See id.

Under Rule 23(a)(4), the lead plaintiff must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "A lead plaintiff meets the adequacy requirement if (1) its claims are not antagonistic or in conflict with those of the class; (2) it has sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) it is represented by competent, experienced counsel who be able to prosecute the litigation vigorously." City of Sterling Heights Gen. Emp. Ret. Sys., 2012 WL 1339678, at *9 (citing Johnson, 214 F.R.D. at 228-29). There is no evidence before the Court to suggest that Cohn's interest is in conflict with those of the purported class. Further, given his alleged losses, Cohn has a substantial interest in the outcome of this case. Finally, as explained below, Cohn is represented by competent, experienced counsel. Accordingly, Cohn satisfies Rule 23(a)'s adequacy requirement.

Because Cohn both satisfies the requirements of Rule 23 and has the largest financial interest, he is the "presumptively most adequate plaintiff." However, as set forth above, other members of the purported class may attempt to rebut this presumption by showing

that Cohn "will not fairly and adequately protect the interests of the class . . . or is subject to unique defenses that render [him] incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

Under this provision, the Pension Trust argues that Cohn is an inadequate lead plaintiff because he is "an individual investor with a history of poor decision-making." Pension Trust Mem. of Law in Opp. to Competing Mots. for App. as Lead Pl. 1. More specifically, the Pension Trust asserts that Cohn has "had multiple encounters with law enforcement, DUI convictions, and been declared bankrupt." Id. at 4. In an affidavit attached to his reply brief, Cohn affirms that he was charged and convicted of driving under the influence three times, the last conviction occurring on December 16, 1986. Decl. of Michael Carter Cohn in Further Supp. of his Mot. for App. as Lead Pl. & Approval of Lead Counsel ¶ 3. Cohn states that, prior to that date, he struggled with alcohol addiction, but that he has not consumed any alcohol in over twenty-five years. Id. Cohn also affirms that he filed for personal bankruptcy in July of 2000, and that, in the years that followed, his "financial condition materially improved." Id. ¶ 2. Prior to his retirement, Cohn was employed as an analytical chemist and quality lab supervisor at Lorillard Tobacco Company for over thirty years. Id.

The DUI convictions, which occurred over twenty-five years ago, are not germane to this action and do not call into question Cohn's adequacy to serve as lead plaintiff. See generally, Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., 229 F.R.D. 395, 417 (S.D.N.Y. 2004) (finding that courts generally reject the most adequate plaintiff presumption only where the proposed lead plaintiff is suspected of violating the precise laws he wishes to invoke).

7

The bankruptcy filing, which occurred twelve years ago, also has no bearing on Cohn's ability to serve as lead plaintiff. As Cohn points out, bankruptcy is not a crime, is not evidence of misconduct, and does not end one's ability to earn an income. The Pension Trust relies on Johnson v. Geico Gas Company, 673 F. Supp. 2d 255, 279 (D. Del. 2009), to argue that the bankruptcy filing should disqualify Cohn. Geico Gas, however, involves facts far beyond those at issue here. In addition to filing for bankruptcy, the proposed class representative in Geico Gas was involved in a mortgage action, replevin action, a criminal charge for writing a bad check in excess of $500, an employment discrimination action, a disorderly conduct charge, and landlord tenant disputes. Id. The court explained that, "[w]hen viewed cumulatively, this history of litigation calls into question Mr. Johnson's adequacy to serve as a class representative." Id. (emphasis added). Cohn does not share nearly such an extensive litigation history.[3] Indeed, courts have rejected attacks on prospective lead plaintiffs with histories far more problematic than those raised here. See, e.g., Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust, 229 F.R.D. at 417 ("[E]ven if the [settled SEC fraud charges] had been proven, they do not appear to represent the degree of serious misconduct that would

---

[3] The other cases that the Pension Trust cites in support of its argument that Cohn cannot adequately represent the class are inapposite. Like Geico Gas, these cases involve potential lead plaintiffs with problematic histories that go far beyond the stale DUI convictions and bankruptcy filing at issue here. See Folding Cartons, Inc. v. Am. Can Co., 79 F.R.D. 698, 703 (N.D. Ill. 1978) (finding that "a number of factors" combine to render the proposed institutional lead plaintiff inadequate, including that its principal "had participated in deceptive selling schemes, had sold sub-standard grade materials while representing them to meet specifications, and had deliberately lied and concealed his actions"); In re Surebeam Corp. Sec. Litig., No. 03 CV 1721JM (POR), 2004 WL 5159061, at *7 (S.D. Cal. Jan. 5, 2004) (rejecting potential institutional lead plaintiff where its president and principal representative was "subject to over sixty complaints to securities regulators including misrepresentation, unauthorized trading in client accounts, and use of unsuitable investments . . .[and] had his National Association of Securities Dealers . . . membership terminated"); In re Peregrine Sys., Inc. Sec. Litig., No. 02 CV 870-J(RBB), 2002 WL 32769239, at *7-8 (S.D. Cal. Oct. 11, 2002) (rejecting potential lead plaintiff on conflict of interest grounds because he was still employed by the defendant corporation and had an interest in continuing his employment).

require the [presumptive lead plaintiff's] candidacy to be rejected at this stage."). Accordingly, the combination of two-decade-old DUI convictions and a personal bankruptcy filing does not call into question Cohn's adequacy to serve as lead plaintiff.

Finally, to the extent that the Pension Trust argues that its status as the lone institutional investor creates a presumption in its favor, that argument is rejected. "[A] plaintiff's mere status as an institutional investor does not provide any presumption that the institutional plaintiff is a more adequate lead plaintiff than an individual investor with a larger financial interest." Mohanty v. BigBand Networks, Inc., No. C 07-5101 SBA, 2008 WL 426250, at *6 (N.D. Cal. Feb. 14, 2008); see also In re Cavanaugh, 306 F.3d 726, 732, 737 n. 20 (9th Cir. 2002) ("[A] straightforward application of the [PSLRA] statutory scheme . . . provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case. . . . If financial sophistication had been Congress's principal concern, it would not have made the plaintiff who lost the most money the presumptive lead plaintiff."); In re Telxon Corp. Sec. Litig., 67 F. Supp. 2d 803, 821-22 (N.D. Ohio 1999) ("The institutional investor is not presumptively the most adequate plaintiff solely by virtue of its status as an institutional investor. . . . If that were the case, Congress would have simply provided that *institutional investors* are presumptively the most adequate plaintiffs, regardless of the size of financial loss, and saved the Court from the need to engage in the very analysis it undertakes here."); Hall v. Medicis Pharm. Corp., Nos. CV-08-1821-PHX-GMS, CV-08-1870-PHX-DKD, CV-08-1964-PHX-JAT, 2009 WL 648626, at *6 (D. Ariz. May 11, 2009) ("[T]he plain language of the PSLRA does not permit the Court to favor [an institutional investor] over another plaintiff with a greater financial stake merely because [the institutional investor]

is an institutional investor."). The Pension Fund's status as an institutional investor, therefore, does not trump the explicit language of the PSLRA. Because Cohn has significantly larger losses and otherwise satisfies Rule 23's requirements of typicality and adequacy, his motion for appointment as lead plaintiff is granted.

**D. Lead Counsel**

The PSLRA provides that the lead plaintiff shall, subject to the Court's approval, select and retain counsel to represent the class, 15 U.S.C. § 78u–4(a)(3)(B)(v), and courts typically do not disturb a lead plaintiff's selection unless it is necessary to protect the interests of the class, In re Flight Safety Techs., Inc. Sec. Litig., 231 F.R.D. 124, 132 (D. Conn. 2005) (collecting cases). Cohn has selected Pomerantz Haudek Grossman & Gross LLP to serve as lead counsel and has attached the firm's resume, which reveals extensive experience and expertise in the area of securities litigation and class actions. See Decl. of Patrick V. Dahlstrom in Supp. of Cohn's Mot. for Consolidation, App. as Lead Pl. & Approval of Lead Counsel, Ex. D. The Pomerantz firm has successfully prosecuted numerous securities fraud actions on behalf of investors, and several courts have acknowledged the firm's ability to successfully litigate such cases. See id. As a result of the Pomerantz firm's experience in litigation involving issues similar to those raised in this case, the Court finds that it has the skill and knowledge necessary to prosecute this action effectively and expeditiously. Accordingly, the Court approves Cohn's selection of Pomerantz Haudek Grossman & Gross LLP as lead counsel in this case. The Court places the parties on notice, however, that it will carefully scrutinize any proposed fee award and will not hesitate to reject such an award if it proves to be unreasonable. See 15 U.S.C. § 78u–4(a)(6) (limiting the total award of attorneys' fees and expenses to "a

reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class").

## II. CONCLUSION

For the foregoing reasons, Cohn's motion to serve as lead plaintiff is granted. The remaining motions to serve as lead plaintiff are denied. The Court approves the selection of Pomerantz Haudek Grossman & Gross LLP as lead counsel.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATED: August 28, 2012