# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

```
------------------------------------------------------------- x
                                                              :
In re GROUPON, INC. SECURITIES LITIGATION                     :
                                                              :
                                                              :
                                                              :
                                                              :
                                                              :   Master File No. 12 C 02450
------------------------------------------------------------- :
                                                              :   CLASS ACTION
This Document Relates To                                      :
     ALL CASES                                                :   Hon. Charles R. Norgle
                                                              :
                                                              :
------------------------------------------------------------- x
```

## REPLY MEMORANDUM IN FURTHER SUPPORT OF
## THE UNDERWRITER DEFENDANTS' MOTION TO DISMISS

Dated: April 22, 2013

RACHLIS DUFF ADLER & PEEL, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
(312) 733-3950

O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
(212) 326-2000

*Attorneys for the Underwriter Defendants*

The Underwriter Defendants[1] (i) join in Groupon's Reply Brief and (ii) submit this reply setting forth additional reasons why the Complaint should be dismissed as to them.

## PRELIMINARY STATEMENT

Plaintiff's Opposition fails to contest—and therefore concedes—the following critical facts:

- Groupon never restated the financial results disclosed in the Offering Documents that are the crux of the Complaint's Securities Act claims;

- the Complaint does not otherwise allege that Groupon misstated the revenues in those financial results by failing to collect and retain those reported revenues;

- the Offering Documents warned investors that the refund estimates on which those revenues were based involved "judgments" that could turn out to be wrong; and

- the Offering Documents did not represent that Groupon's internal controls were adequate and, to the contrary, warned investors that those controls could be *in*adequate.

The Opposition's challenge, as a result, was to explain how the Complaint nonetheless pleads a material misstatement in the Offering Documents based on supposed accounting flaws, even though the revenue-recognition accounting standards at issue inherently depend on management's subjective judgment. The Opposition fails to do so.

*First*, Plaintiff argues that he does not need to allege an accounting restatement to plead a material misstatement. But the Complaint's core problem is its failure to allege *any* earnings-related misstatement—*i.e.*, that Groupon did not collect and retain the revenues it reported in the

---

[1] This Memorandum refers to: (1) the Memorandum of Law in Support of the Underwriter Defendants' Motion to Dismiss and Joinder in the Groupon Defendants' Motion to Dismiss as the "UW Opening Brief" or "UW Mem."; (2) the Lead Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss as the "Opposition" or "Opp."; and (3) the Reply in Support of the Groupon Defendants' Motion to Dismiss Consolidated Amended Class Action Complaint as "Groupon's Reply Brief." Unless otherwise indicated, all other defined terms have the meanings ascribed to them in the UW Opening Brief, all emphasis is added, and all citations and quotations are omitted.

Offering Documents (for the first, second, and third quarters of 2011), or other facts showing that those revenues were misstated. Without a plausible basis for such an allegation, the Complaint fails to provide a factual predicate for its allegation that Groupon materially misstated its revenues in the Offering Documents.

*Second*, in light of the complete absence of an earnings misstatement, Plaintiff cannot distort GAAP to fabricate one. Plaintiff argues that the GAAP standards for recognizing revenue on sales of services subject to a return right—set forth in SAB Topic 13(A)(4)(a)—are somehow "objective," but GAAP by its terms (and as a matter of common sense) required Groupon to make judgments about its refund estimates. These include inherently subjective judgments about matters such as the homogeneity of data pools, and whether a company "believes" its historical data is predictive of future events. Indeed, case law describes what Plaintiff admits is an analogous GAAP provision as involving significant judgment. Accordingly, under *Fait v. Regions Financial Corp.*, Plaintiff can state a securities claim only by alleging that those refund estimates (and the revenues derived from them) were objectively and subjectively false. As shown in the UW Opening Brief, Plaintiff cannot do so because he has disclaimed pleading scienter, and courts have held that such a disclaimer negates subjective falsity where, as here, the challenged statement's originator is also a defendant. And in any event, Plaintiff nowhere squares his "subjective falsity" argument with Groupon's candid disclosures in the Offering Documents regarding the basis for its revenue-recognition judgment—along with warnings that reported revenue could end up differing if the company's judgments regarding estimated customer refunds turned out to be inaccurate—which allowed investors to decide for themselves whether that judgment was reasonable.

*Third*, faced with Defendants' showing that they had no duty to discuss Groupon's internal controls in the Offering Documents, Plaintiff tries to fashion a duty by arguing that Groupon *implicitly* touted its internal controls simply by booking revenues. But that argument conveniently ignores the Offering Documents' *express* warning that Groupon's internal controls could be inadequate. That explicit warning trumps Plaintiff's concocted implicit endorsement.

*Finally*, beyond these fundamental problems with his misstatement theory, Plaintiff concedes that he did not purchase directly in the IPO and thus lacks standing to assert a Section 12(a)(2) claim. Plaintiff seeks only to stall the issue in his Opposition, asking the Court to defer any standing decision until class certification. But Plaintiff cannot deny that no qualified plaintiff came forward during the lengthy Congressionally-mandated lead-plaintiff process. The Court should therefore in all events follow the long line of cases that have dismissed Section 12(a)(2) claims at the pleading stage for lack of standing.

**ARGUMENT**

Plaintiff tries to overcome the Complaint's critical factual deficiencies by mischaracterizing Rule 8's pleading requirements in his Opposition. Contrary to Plaintiff's argument (*see* Opp. at 15), merely alleging what "could" have happened is not enough. Rather, the Seventh Circuit has emphasized the substantial "factual heft required to survive a motion to dismiss after *Twombly* and *Iqbal*." *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). And as Plaintiff's own authority holds, that pleading burden increases for complex claims like securities class actions. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010) ("A more complex case . . . will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected.") (cited in Opp. at 15). The complex securities claim Plaintiff has asserted here does

not "allege enough factual matter as a basis for [its] claim[] to nudge the[] claim across the line from conceivable to plausible." *City of New Orleans Emps. Ret. Sys. v. PrivateBancorp, Inc.*, No. 10-C-6826, 2011 U.S. Dist. LEXIS 128352, at *32 (N.D. Ill. Nov. 3, 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

I.   **THE COMPLAINT FAILS TO PLEAD A MATERIAL MISSTATEMENT OR OMISSION IN THE OFFERING DOCUMENTS.**

   A.   **The Complaint Fails to Allege that the Offering Documents' Revenue Numbers Were Misstated.**

Plaintiff has failed to show that the Complaint adequately alleges that the Offering Documents misstated Groupon's revenues. This is plain from Plaintiff's failure to contest that:

- the Offering Documents contain revenue numbers for only the first three quarters of 2011;

- the Complaint nowhere alleges that Groupon did not collect and retain all those reported revenues; and

- Groupon has not restated its revenues for the first three quarters of 2011.

As the Underwriter Defendants demonstrated (UW Mem. at 10–11), absent allegations that the revenues reported in the Offering Documents were not actually collected and retained, the Complaint fails to plead a misrepresentation in the Offering Documents.

Plaintiff's sole response—that the absence of a restatement does not defeat the Securities Act claims (Opp. at 38–40)—fends off a straw man. The Underwriter Defendants have never argued that a restatement is a prerequisite to a Securities Act claim. Rather, the absence of any basis to allege that Groupon's collected revenues were not actually retained—including a restatement—leaves Plaintiff without a plausible factual basis to allege a misstatement. Courts

routinely hold that the lack of a restatement defeats a securities claim where there are no other allegations showing that the financial statements are inaccurate. (*See* UW Mem. at 10–11.)[2]

Plaintiff's half-hearted effort to distinguish *In re Franklin Bank Corp. Securities Litigation*, 782 F. Supp. 2d 364, 407 (S.D. Tex. 2011) (Opp. at 39 n.19), makes precisely the Underwriter Defendants' point—the court there found that plaintiffs had failed to allege a misrepresentation because the registration statement "was not impacted by" the restatement of later periods. (*Id*.) That is exactly what happened with Groupon, which restated its Q4 2011 revenues (which were not in the Offering Documents), but never restated the Q1–Q3 2011 revenues in the Offering Documents that Plaintiff now attacks. And the cases on which Plaintiff relies are inapposite because each involved an independent basis for a misrepresentation in the unrestated period:

- In *Aldridge*, the defendants admitted they used improper accounting practices during the period in which there was no restatement. *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 81–82 (1st Cir. 2002).

- In *Oxford,* the state insurance regulator fined the defendant $3 million and took other enforcement action because the defendant's claims reserves were understated by about $100 million. *In re Oxford Health Plans, Inc. Sec. Litig.*, 187 F.R.D. 133, 137–39 (S.D.N.Y. 1999).

- In *LDK Solar*, the defendant's controller resigned during the unrestated period (Q3–Q4 2007), explaining in a contemporaneous e-mail that he wanted "to keep away from any potential securities fraud, as well as many other non-compliances or violations," and *Barron's* reported, citing company sources, that the defendant

---

[2] *See also In re Huntington Bancshares Sec. Litig.*, 674 F. Supp. 2d 951, 973 (S.D. Ohio 2009) (dismissing claim concerning third-quarter 2007 financials because lack of restatement "lends credence" that third-quarter numbers "were properly recorded based on the then-available information"); *Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 148 (D. Conn. 2007) (dismissing claim that loss reserves were inadequate because "there is no allegation here [that] there has been any restatement . . . or that any auditor or actuary has qualified or withdrawn its opinion"); *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 438 (S.D.N.Y. 2005) ("Accordingly, to the extent that plaintiffs cite statements by defendants that do not report, relate to, or discuss aspects of the financials that subsequently were restated, they have not alleged falsity . . . .").

had overstated revenue in Q3–Q4 2007 by $92 million. *In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1239 (N.D. Cal. 2008).[3]

Here, in contrast, the Complaint makes no allegation that Groupon did not ultimately collect and retain the revenue it reported in the Offering Documents.

### B. The Complaint Fails to Allege a Misrepresentation Under *Fait v. Regions*.

#### 1. *SAB Topic 13(A)(4)(a)'s Criteria Are Subjective.*

Plaintiff next attempts to backdoor a revenue-recognition misrepresentation claim by resorting to GAAP. But he can do so only by miscasting the applicable accounting standards as concrete and objective. That approach is eviscerated by Plaintiff's concession that SAB Topic 13(A)(4)(a), the accounting standards for recognizing revenue on services subject to a refund right, is analogous to FAS 48, the criteria for sales of goods subject to a refund right. (Opp. at 9 n.5; Compl. ¶ 77.) As the Underwriter Defendants have shown, applying the concededly analogous FAS 48 standard "entails a degree of *unavoidable guesswork*." *In re Segue Software, Inc. Sec. Litig.*, 106 F. Supp. 2d 161, 169 (D. Mass. 2000). The Complaint must therefore plead that the revenue numbers in the Offering Documents were "both objectively false and disbelieved by the defendant at the time [they were] expressed." *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110 (2d Cir. 2011). None of Plaintiff's four arguments is to the contrary.

*First*, Plaintiff cannot magically transform SAB Topic 13(A)(4)(a)'s judgment-based factors into objective, bright-line criteria. (Opp. at 27–29.) Plaintiff concedes that one factor is subjective (Opp. at 27) because it turns on whether "the company believes that [its] historical experience is predictive of future events." Because a company *must* satisfy this factor to book

---

[3] Plaintiff's two remaining cases are distinguishable because they deal not with financial restatements or the Securities Act, but with the scienter pleading standard for Exchange Act claims. *See Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702 (7th Cir. 2008); *Roth v. AON Corp.*, No. 04-C-6835, 2008 WL 656069 (N.D. Ill. Mar. 7, 2008).

revenues under SAB Topic 13(A)(4)(a), the test indisputably involves judgment and opinion. (*Id.*) And the two relevant remaining factors also involve management's judgment and opinion. While Plaintiff contends that determining whether a data pool is "homogeneous" is objective because the SEC has defined it to mean "the same characteristics such as terms, periods, class of customers, nature of service, *etc.*" (Opp. at 28), this inquiry entails judgment in choosing the relevant "characteristics" and assessing what makes them the same or different. Similarly, Plaintiff gropes for bright-line objectivity in the factor requiring "reliable estimates" by citing the SEC's definition of "reliable" as "representationally faithful, verifiable, and neutral." But that definition is just another way of examining what the concededly subjective factor demands— whether management believes the historical data is sufficiently reliable to be "predictive of future events."

The subjective nature of the SAB Topic 13(A)(4)(a) factors is also plain from Groupon's letter to the SEC, publicly disclosed to investors before the IPO. Groupon articulated the basis for its belief that its historical experience was predictive of future events (the concededly subjective factor)—"the sheer volume of transactions (approximately 60 million Groupons sold) as well as the lack of any material change in the refund percentage over time." (Compl. ¶ 79 (quoting Groupon Comment Letter Response at 35).) Groupon also explained that it believed its 60-million-Groupon data pool was sufficiently "large" and explained why it believed that the pool was sufficiently "homogeneous": "[Groupon] does not believe the characteristics of its merchants within a geographical region differ from one another . . . . [B]ased on the Company's historical experiences to date, it has not noted significantly different trends from one geography to another." (*Id.*) These same reasons support a conclusion that the estimates were "reliable" because the Company believed its historical experience was "representationally faithful,

verifiable and neutral." (*Id.*) Thus, the accounting decisions at issue were rife with judgments based on management's experience, thereby triggering the *Fait* standard.

*Second*, Plaintiff argues that courts consider revenue recognition to be an objective question. (Opp. at 29–30.) But Plaintiff provides no precedent for this argument. The decisions Plaintiff cites either found the securities claim lacking or are inapposite. *See Greebel v. FTP Software, Inc.*, 194 F.3d 185, 204 (1st Cir. 1999) (affirming dismissal of claim based on FAS 48 violations); *In re Milestone Scientific Sec. Litig.*, 103 F. Supp. 2d 425, 474 (D.N.J. 2000) (dismissing claim for FAS 48 violations); *Schlagal v. Learning Tree Int'l*, No. CV 98-6384 ABC, 1998 WL 1144581, at *2 (C.D. Cal. Dec. 23, 1998) (allowing claim to proceed where complaint alleged that the company failed to collect booked revenue); *Schultz v. Applica, Inc.*, 488 F. Supp. 2d 1219, 1225 (S.D. Fla. 2007) (no contention that FAS 48 or SAB Topic 13(A)(4)(a) applied).

*Third*, Plaintiff argues that any dispute over GAAP's application must be resolved at trial with the aid of expert testimony. (Opp. at 32.) But with one exception, all of Plaintiff's cases (*see* Opp. at 32–34) pre-date *Fait*,[4] and Plaintiff's only post-*Fait* case, *Phillips v. Scientific-Atlanta, Inc.*, 489 F. App'x 339 (11th Cir. 2012) is inapposite because it: (i) did not address *Fait*; (ii) did not analyze misrepresentation claims based on subjective GAAP rules; and (iii) merely affirmed summary judgment based on expert testimony concerning a different GAAP rule. *Id.* at 343. In fact, courts in many cases—including *Fait*—determined at the pleading stage that the complaint failed to state a GAAP-violation claim.[5] And in any event, the "experts" on

---

[4] Plaintiff's reliance on *Takara Trust v. Molex Inc.*, 429 F. Supp. 2d 960 (N.D. Ill. 2006) (cited in Opp. at 18), is misplaced for the same reason.

[5] *See, e.g.*, *City of New Orleans*, 2011 U.S. Dist. LEXIS 128352, at *27–30 (dismissing Section 11 and 12 claims that defendants' loan loss estimations violated GAAP); *see also Lighthouse Financial Group v.*

which Plaintiff relies questioned only Groupon's revenue-recognition practices *for the revised Q4 2011 period*—not the Q1–Q3 2011 revenues reported in the Offering Documents. (Opp. at 12; Compl. ¶¶ 13–14.)

*Fourth*, Plaintiff cannot survive dismissal by pointing to former Groupon CEO Andrew Mason's February 28, 2013 resignation letter in which he acknowledged that he was fired in part for "material weakness" and "controversial metrics in our S1." (Opp. at 22 n.10.) The Court should not consider that letter (which the Complaint neither cites nor incorporates) on this motion. *See, e.g.*, *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss."). But Mason's generic comments are unavailing in any event, because he only characterizes Groupon's metrics as "controversial," which further suggests that reasonable minds could differ in applying those metrics.

2. *The Complaint Fails to Allege Subjective Falsity.*

Under *Fait*, Groupon's revenue judgments in the Offering Documents could be actionable only if they were actually false and Groupon did not actually believe them. (*See* UW Mem. at 17.) Plaintiff concedes, as he must, that the Complaint disclaims Defendants' knowing fraud. (Compl. ¶¶ 138, 148.) His argument that this disclaimer has no bearing on whether the Complaint pleads subjective falsity under *Fait* is wrong.

While the Second Circuit in *Fait* made clear that scienter and "subjective falsity" are not "one and the same" (Opp. at 35), post-*Fait* cases nevertheless have concluded that disclaimers

---

*Royal Bank of Scotland Group, PLC*, No. 11 Civ. 398, 2012 WL 4616958, at *11 (S.D.N.Y. Sept. 28, 2012) (dismissing Section 11 and 12 claims that defendants' valuation of complex securitized holdings violated GAAP); *In re Deutsche Bank AG Sec. Litig.*, No. 9 Civ. 1714, 2012 U.S. Dist. LEXIS 115088, at *7 (S.D.N.Y. Aug. 10, 2012) (dismissing Section 11 claims that defendants' valuation of mortgage-backed assets violated GAAP).

like that in the Complaint foreclose a plausible "subjective falsity" allegation. *See, e.g.*, *In re GE Sec. Litig.*, 856 F. Supp. 2d 645, 657 (S.D.N.Y. 2012) (holding that a complaint that disclaimed "knowing misconduct" cannot allege "subjective falsity"); *NECA-IBEW Pension Trust Fund v. Bank of Am. Corp.*, No. 10 Civ. 440, 2012 U.S. Dist. LEXIS 186415, at *4–5 (S.D.N.Y. Mar. 16, 2012) (holding that when "the complaint affirmatively disclaims any assertion of fraud" it cannot allege the speaker "did not . . . actually hold the opinions and beliefs in question"). Plaintiff has cited no post-*Fait* case allowing a plaintiff to plead subjective falsity in the face of a scienter disclaimer.

There is a good reason for this. As one court explained, the distinction between *Fait*'s "subjective falsity" requirement and scienter turns entirely on whose opinion is at issue: "the subjective falsity that *Fait* requires in order to impose Securities Act liability based on a statement of opinion is falsity *on the part of the originator of the opinion*." *Fed. House Fin. Agency v. UBS Ams., Inc.*, 858 F. Supp. 2d 306, 326 (S.D.N.Y. 2012). Where, as here, the defendant's opinion is at issue, there is no difference between the two. *See id.* at 327 ("[W]here the originator of the opinion is a defendant, proving the falsity of the statement 'I believe this investment is sound' *is the same as proving scienter*."). Having disclaimed alleging that Groupon had scienter, Plaintiff cannot make the same allegation under the label of "subjective falsity." *See In re GE Sec. Litig.*, 856 F. Supp. 2d at 657.

Plaintiff's unwillingness even to attempt to plead scienter is understandable given Groupon's candid pre-IPO disclosures of its SAB Topic 13(A)(4)(a) methodology underlying its refund estimates ("a rolling average of the historical refund percentages for all historical months excluding any outliers") and its reason for believing that methodology was appropriate even though the company had a "relatively limited history of operations" ("the sheer volume of

transactions (approximately 60 million Groupons sold) as well as the lack of any material change in the refund percentage over time"). (Compl. ¶ 79 (quoting Groupon Comment Letter Response at 34–35).) And Groupon simultaneously cautioned investors that its "actual level of refund claims could prove to be higher" than its estimates and that if its "judgments regarding estimated customer refunds [were] inaccurate, reported results of operations could differ" from what was reported in the Offering Documents. (*See* UW Mem. at 7–8.) These disclosures and the Complaint's scienter disclaimer render irrelevant Plaintiff's contrived "subjective falsity" pleading laundry list. (Opp. at 35–38.) *See, e.g.*, *Iron Workers Local No. 25 Pension Fund v. Oshkosh Corp.*, No. 08-C-797, 2010 WL 1287058, at *21 (E.D. Wis. Mar. 30, 2010) ("As such, because the company actually provided all the underlying data required to make the accounting judgment in question, it is difficult to believe that the failure to take an impairment was part of some scheme to deceive.").

   **C.** **The Complaint Fails to Plead a Securities Act Claim for Omitting Alleged Material Internal Controls Weaknesses.**

Plaintiff also argues that the Offering Documents omitted disclosures that Groupon's internal controls were inadequate. Plaintiff does not deny either that: (i) "[s]ilence, absent a duty to disclose, is not misleading," *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988); *see also Congregation of the Passion, Holy Cross Province v. Kidder Peabody & Co.*, 800 F.2d 177, 182 (7th Cir. 1986) ("Liability . . . for failure to disclose depends upon the existence of a duty to disclose."); or (ii) Regulation S-K, which governs required disclosures in offering materials, imposes no duty to make disclosures about the issuer's internal controls. *See* 17 CFR § 229.308, Instruction 1. But Plaintiff contends that a disclosure duty arose here because Groupon implicitly affirmed its internal controls' effectiveness by issuing its financial statements. (Opp. at 18–19.) That argument is factually wrong and legally unsupported.

Plaintiff cannot deny that far from touting Groupon's internal controls, the Offering Documents warned investors that "[i]n the event of further growth of our operations or in the number of our third-party relationships . . . our internal controls and procedures may not be adequate to support our operations." (*See* Groupon Defs. Mem. Ex. A at 18.) This explicit warning overrides any "implicit" endorsement Plaintiff contends Groupon made. *See, e.g.*, *Klein v. General Nutrition Cos.*, 186 F.3d 338, 344 (3d Cir. 1999) (holding that "meaningful cautionary language renders an alleged omission immaterial as a matter of law"); *In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.*, 286 F. Supp. 2d 1047, 1061 (D. Minn. 2003) ("Cautionary language, if sufficient, renders the alleged omissions or misrepresentations immaterial as a matter of law when it relates directly to the issue about which plaintiffs allege they were misled."); *In re Alliance N. Am. Gov't Income Tr., Inc. Sec. Litig.*, No. 95 Civ. 330, 1996 WL 551732, at *9 (S.D.N.Y. Sept. 27, 1996) ("In light of these disclosures . . . due to the explicit warnings . . . any misstatements or omissions were immaterial as a matter of law."). And Plaintiff cites no authority for his novel argument that a company implicitly vouches for its internal controls merely by issuing financial statements.

In any event, even if Groupon had not warned investors of the internal controls' potential inadequacy, the Complaint's internal-controls claim would still fail. This is because, as Defendants showed in their opening briefs, the Complaint fails to allege plausibly that Groupon's internal controls were ineffective when it issued the Offering Documents, as opposed to some later time. (*See* Groupon Defs. Mem. at 19–20; UW Mem. at 9–10.) Other than a completely circular argument that Groupon's internal controls were inadequate because Groupon could not estimate refunds, the Complaint's sole support comes from confidential witnesses. (Opp. at 26; Compl. ¶¶ 99–101.) But Plaintiff has not responded to the Underwriters Defendants' showing

that these confidential witnesses do not support an allegation of inadequate internal controls when the Offering Documents were issued. (*See* UW Mem. at 9–10.) Plaintiff has therefore conceded the point. *See, e.g.*, *Rosen v. Mystery Method, Inc.*, No. 07-C-5727, 2008 WL 723331, at *6 (N.D. Ill. Mar. 14, 2008) ("A litigant's failure to respond to arguments the opposing party raises in a motion to dismiss operates as a waiver or forfeiture.").

## II. PLAINTIFF LACKS STANDING TO ASSERT A SECTION 12(a)(2) CLAIM.

Plaintiff concedes that he lacks standing to pursue Section 12(a)(2) claims. (*See* Opp. at 41 ("Underwriter Defendants are correct factually as to Plaintiff's purchases.").) Plaintiff's only response is to ask the Court to defer determining his standing until class certification. (*Id.* at 42.) But courts routinely dismiss Section 12(a)(2) claims at the pleading stage for lack of standing. *See Ong v. Sears, Roebuck & Co.*, 388 F. Supp. 2d 871, 892 (N.D. Ill. 2004) (Pallmeyer, J.) (granting motion to dismiss Section 12(a)(2) claims where named plaintiff lacked standing).[6] The one case on which Plaintiff relies, *Friedman v. Rayovac Corp.*, 295 F. Supp. 2d 957, 976–77 (W.D. Wis. 2003), is inapposite because it involved multiple named plaintiffs with uncertain standing. *Ong*, 388 F. Supp. 2d at 891. Here, the lone Plaintiff admits he lacks standing.

The Court should not indulge Plaintiff's request to search for another investor with standing. The six-month PSLRA-mandated lead-plaintiff process over which the Court presided involved (i) the public filing of five initial complaints and actions in early April, 2012; (ii) twenty-seven law firms issuing the PSLRA-mandated press release to ensure that all potentially interested investors knew of the action and had an opportunity to make a lead-plaintiff

---

[6] *See also In re Mun. Mortg. & Equity, LLC*, No. 8 MDL 1961, 2012 U.S. Dist. LEXIS 88339, at *108–16 (D. Md. June 26, 2012); *In re Century Aluminum Co. Sec. Litig.*, 749 F. Supp. 2d 964, 977 (N.D. Cal. 2010); *Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 714 F. Supp. 2d 475, 484 (S.D.N.Y. 2010); *In re Wells Fargo Mortgage-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 966 (N.D. Cal. 2010).

application; and (iii) motions and responses by five movants seeking appointment as lead plaintiff. The very reason that Congress mandated this process was to ensure that securities claims were well-publicized and that qualified and representative plaintiffs with the largest interest would come forward on a timely basis to control this action's prosecution. *See* Joint Explanatory Statement of the Committee of Conference, Conference Report on Securities Litigation Reform, H.R. Rep. No. 104-369, at 32 (1995) (PSLRA plaintiff notice "provisions are intended to encourage the most capable representatives of the plaintiff class to participate in class action litigation"); *see also Marsden v. Select Medical Corp.*, No. Civ. A. 04-4020, 2005 WL 113128, at *3 (E.D. Pa. Jan. 18, 2005) ("[T]he fundamental purpose of the notice requirement . . . is to provide class members with sufficient information about the suit and the requirements for lead plaintiff appointment so that they can make an informed judgment about whether they wish to seek lead plaintiff status."). No plaintiff with Section 12(a)(2) standing surfaced during that exhaustive process. There is no reason in law or equity to commission a new search for a qualified investor who can somehow now be convinced to serve as lead plaintiff on the Securities Act claim.

## CONCLUSION

Plaintiff has failed to contest the Underwriter Defendants' key arguments:

- The Complaint fails to allege that Groupon restated or did not collect and retain the revenues Plaintiff maintains were erroneously booked. Nothing in Plaintiff's complex accounting arguments can remedy this glaring pleading deficiency. This is especially so in light of the difficult business judgments—which Groupon fully disclosed—that those accounting rules entail.

- The Offering Documents' explicit warning that Groupon's internal controls could prove *inadequate* defeats any claim that the Offering Documents implicitly represented that those controls were sufficient.

- Plaintiff lacks standing to bring a Section 12(a)(2) claim.

-14-

The Court should therefore dismiss the Complaint with prejudice as to the Underwriter Defendants.

| | |
|---|---|
| Dated: April 22, 2013 | Respectfully submitted, |
| | /s/ Kevin B. Duff |
| Jonathan Rosenberg | Kevin B. Duff |
| William J. Sushon | Michael Rachlis |
| Allen Burton | RACHLIS DUFF ADLER & PEEL, LLC |
| Edward Moss | 542 South Dearborn Street, Suite 900 |
| O'MELVENY & MYERS LLP | Chicago, IL 60605 |
| 7 Times Square | (312) 733-3950 |
| New York, NY 10036 | |
| (212) 326-2000 | *Attorneys for the Underwriter Defendants* |