UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **In re GROUPON, INC. SECURITIES LITIGATION,** | **Master File No. 12 C 2450** |
| **This Document Relates To:** | **Magistrate Judge Mary M. Rowland** |
| ALL ACTIONS. | |

## ORDER

The Groupon Defendants' Motion to Exclude the Opinions and Testimony of Steven P. Feinstein and Request for Evidentiary Hearing on Same [234] is **GRANTED IN PART**. The Court will hold an evidentiary hearing on the admissibility of Dr. Feinstein's opinions and testimony. Defendants' request to exclude Dr. Feinstein's opinions and testimony is taken under advisement. A status hearing is set for May 22, 2014, at 9:30AM, at which time the parties should be prepared to set the evidentiary hearing.

## STATEMENT

### Background

Lead Plaintiff asserts Securities Act claims, alleging that Defendants made false statements in Groupon's IPO registration statement. To establish a claim under §§ 11 and 12 of the Securities Act, "plaintiffs need only show that they purchased the security and that there was a material misrepresentation or omission. Scienter is not required. Liability of the issuer of a materially misleading registration statement is 'virtually absolute,' even for innocent misstatements." *In re Ulta Salon, Cosmetics & Fragrance, Inc. Sec. Litig.*, 604 F. Supp. 2d 1188, 1192 (N.D. Ill. 2009). Plaintiff also asserts Exchange Act claims based on Groupon's reported financial results from the fourth quarter of 2011, as well as certain oral statements allegedly made by some of the individual defendants in February and March 2012. Plaintiff seeks to represent: (a) all persons or entities who purchased or acquired the common stock of Groupon pursuant and/or traceable to the IPO between November 4, 2011 through and including March 30, 2012 (the Securities Act Class); and (b) a subclass consisting of all persons who purchased or otherwise acquired the common stock of Groupon between February 9, 2012 through and including March 30, 2012 (the Exchange Act Subclass).

Plaintiff seeks class certification under Rule 23(b)(3), which requires common issues of law and fact to "predominate over any questions affecting only individual

members," and that a class action is "superior" to other methods of adjudication. In determining whether common issues predominate, courts must consider both affirmative claims and potential defenses. *In re IndyMac Mortgage-Backed Sec. Litig.*, 286 F.R.D. 226, 236 (S.D.N.Y. 2012); *Myers v. Hertz Corp.*, 624 F.3d 537, 549 (2d Cir. 2010).

## **Discussion**

The elements of an Exchange Act claim are "falsehood in connection with the purchase or sale of securities, scienter, materiality, reliance, causation, and loss." *Schleicher v. Wendt*, 618 F.3d 679, 682 (7th Cir. 2010). Reliance demonstrates how the defendant's false statements caused the plaintiff's loss. *Id.* In 1988, the Supreme Court ruled that when a stock is well-followed and frequently traded, the fraud-on-the-market doctrine "supplants 'reliance' as an independent element by establishing a more direct method of causation." *Id.*; *see Basic Inc. v. Levinson*, 485 U.S. 224 (1988). Thus, "[w]hen a company's stock trades in a large and efficient market, the contestable elements of the [Exchange Act] claim reduce to falsehood, scienter, materiality, and loss. Because each investor's loss usually can be established mechanically, common questions predominate and class certification is routine, if a suitable representative steps forward." *Schleicher*, 618 F.3d at 682. In *Cammer v. Bloom*, 711 F. Supp. 1264, 1285–87 (D.N.J. 1989), the court identified several factors to evaluate when considering whether a stock trades in an efficient market: (1) average weekly trading volume during the class period; (2) number of security analysts who followed and reported on the stock during the class period; (3) number of market makers; (4) whether the company was entitled to file an S-3 Registration Statement; (5) whether empirical facts demonstrate a cause-and-effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price.

In his class certification motion, Plaintiff relies on the opinion of Dr. Steven P. Feinstein to establish that Groupon traded in an efficient market during the Exchange Act Subclass period. (Dkt. 188 at 19–23). Defendants have moved to exclude Dr. Feinstein's opinion, arguing that it fails to meet the legally required standards for expert testimony under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). (Dkt. 235). Defendants contend that their expert, Dr. Paul A. Gompers, has demonstrated that Dr. Feinstein's analysis is unsound and unreliable because it ignores short-selling constraints on Groupon shares and uses unscientific and unreliable event study methodology. (*Id.* at 5–13).

The Seventh Circuit explicitly requires district courts to "perform a full *Daubert* analysis before certifying the class if the situation warrants." *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815–16 (7th Cir. 2010) ("We hold that when an expert's report or testimony is critical to class certification . . ., a district court must conclusively rule on any challenge to the expert's qualifications or submissions prior to ruling on a class certification motion."). In addition to ruling on the expert's qualifications, "[t]he court must also resolve any challenge to the reliability of information

provided by an expert if that information is relevant to establishing any of the Rule 23 requirements for class certification." *Id.* at 816. Indeed, "[i]f a district court has doubts about whether an expert's opinions may be critical for a class certification decision, the court should make an explicit *Daubert* ruling." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 812 (7th Cir. 2012).

The parties agree that before the Court can take up the issue of class certification, the Court must first resolve the issue whether to consider Dr. Feinstein's opinions at all. (Dkt. 235 at 1; *see* Dkt. 239 at 2–3). The parties also agree that the issue of Dr. Feinstein's opinion is governed by Fed. R. Evid. 702 and *Daubert*. (Dkt. 235 at 4; Dkt. 239 at 3–4). Nevertheless, Plaintiff contends that the admissibility of Dr. Feinstein's opinions and testimony can be decided without an evidentiary hearing, citing to several cases in this jurisdiction. (Dkt. 239 at 11 & n.6) ("In this jurisdiction, class certification-related issues in securities fraud action are generally determined without oral argument, let alone evidentiary hearing, even where they involve questions regarding the reliability of an expert."). But the class-certification issues in all but one of Plaintiff's cases were decided *prior* to the *American Honda* decision,[1] and after reviewing the docket, none of the cases included a request by defendants to hold a *Daubert* hearing. *See Roth v. Aon Corp.*, No. 04 C 6835, 238 F.R.D. 603 (N.D. Ill. 2006) (opinion granting class certification); *Silverman v. Motorola, Inc.*, No. 07 C 4507 (N.D. Ill. Aug. 25, 2009) (order granting class certification); *Levie v. Sears Roebuck Co.*, No. 04 C 7643, 496 F. Supp. 2d 944 (N.D. Ill. 2007) (opinion granting class certification in part).

The Court finds an evidentiary hearing procedurally appropriate prior to ruling on the admissibility of Dr. Feinstein's opinions and testimony. A status hearing is set for May 22, 2014, at 9:30AM, at which time the parties should be prepared to set the form, substance, and date of the evidentiary hearing.

Dated: May 16, 2014                                *Mary M Rowland*

---

[1] In the other case, the district court's opinion *denying* class certification was issued six weeks after the *American Honda* decision and there is no indication on the docket that the parties brought the case to the court's attention. *See In re Northfield Labs., Inc. Sec. Litig.*, No. 06 C 1493, 267 F.R.D. 236 (N.D. Ill. May 18, 2010).